UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDAL SHELTON,

        Plaintiff,                      Case No. 1:13-cv-441

v.                                            Hon. Robert J. Jonker

MICHIGAN TURKEY PRODUCERS
COOPERATIVE, INC.,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

Randal Shelton, commenced this action as a *pro se* plaintiff. The undersigned entered a report recommending *sua sponte* dismissal of the action because plaintiff failed to name a defendant in his original complaint. Shortly thereafter, plaintiff retained an attorney who moved to vacate the report and recommendation and to file an amended complaint. The Court granted the requested relief. This matter is now before the Court on a motion to dismiss the amended complaint filed by defendant Michigan Turkey Producers Cooperative, Inc. ("MTP") (docket no. 10).

        **I.**        **Plaintiff's original complaint**

Plaintiff commenced this action by filing a document which the Clerk's Office designated as his complaint. *See* Compl. (docket no. 1). Plaintiff's one-page complaint did not have a caption and failed to identify a defendant, stating as follows (in his words):

        Randal Shelton request a court attorney the bills it take four month to get the unemployment protest protest I pays F, O, C to defendants an son I wound like to use as proof a tape HR did not do misconduct to no one Thank you,

        I was trying to do dental care

> I was trying to do hand & fingel diagnosis in pain, day lee I need my priority Health HMO my kids do to Thank you was not trying to be jobless 46 year old, never disrespected or demeaned a co-worker They disrespected me daly and H.R. care less.

Compl. (docket no. 1).

Plaintiff's complaint included 22 pages of attachments which relate to a number of matters which are not alleged in the complaint: a right-to-sue letter from EEOC applicable to claims under Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination At, or the Age Discrimination in Employment Act; a protest of a re-determination related to a state unemployment claim; a decision from an state administrative law judge finding that plaintiff was "not disqualified for benefits" from his employer, MTP dated July 16, 2012; a treatment sheet from Orthopaedic Associates of Michigan , PC, dated February 14, 2012, which appears to order x-rays, with the name of the insurer, "Priority Health HMO" highlighted; a patient ledger sheet from Grand Valley Dental Care, P.C. in which someone circled a "professional courtesy" reduction in the patient bill in the amount of $95.00 on January 12, 2012; an undated copy a newspaper article entitled "Michigan Turkey Producers Cooperative celebrates 13 years;" a copy of plaintiff's Priority Health member card; a handwritten note dated April 7, 2012 stating that plaintiff started working at MTP on "June 1st," and which refers to harassment, misunderstanding regarding over-time hours, and someone "trying to set me up to take my job" ; copies of plaintiff's employee "year to date history report" from 2011 and 2012; a charge of discrimination dated March 14, 2012 and filed with the MDCR and EEOC alleging incidents of race discrimination against MTOP in violation of Michigan's Elliott Larsen Civil Rights Act and Title VII occurring on November 23, 2011 (alleging receipt of a written discipline from "respondent's Caucasian human resources representative for an alleged policy violation" and being subjected to six months of "unprofessional treatment by a

2

Caucasian employee on another shift") and March 6, 2012 (alleging that after plaintiff "attempted to file a complaint against the respondent's Caucasian supervisor with the respondent's Caucasian human resources representative," he was discharged "by the respondent's Caucasian supervisor for allegedly being a threat to the respondent;" however, plaintiff believes that he was discharged due to his race); a written verbal warning for poor overall attitude issued to plaintiff for incidents occurring on November 18 and 21, 2011; a suspension without pay for one day for inappropriate conduct and unprofessional/poor behavior (raising his voice and confronting another associate) for an incident that occurred on November 23, 2011; a suspension without pay pending investigation for insubordination/noncompliance and inappropriate conduct on March 6, 2012 after telling another employee that "he didn't want to be around Linh Pham, because he didn't want to go to jail for hurting him [] and jobs are hard to find"); a questionnaire regarding plaintiff's reasons for being fired; a letter from MTP dated March 7, 2012 advising plaintiff that his employment was terminated that date "due to continued inappropriate conduct and lack of courtesy and respect"; and a document dated November 30, 2011, entitled "This is not a complaint form," in which plaintiff stated that MTP discriminated against him due to race, color and age, based upon the following conduct (in plaintiff's words) "being push off jobs, seting me up." *See* Attachments (docket no. 1-1). Plaintiff also attached a largely unintelligible cassette tape dated December 1, 2011. *See* Attachment (docket no. 1-2).

The Court granted plaintiff's application to proceed *in forma pauperis*. *See* Order (docket no. 3). On April 25, 2013, this case was referred to the undersigned for handling all matters under 28 U.S.C. §§ 636(a) and 636(b)(1)(A), and for submission of recommendations on dispositive motions under § 636(b)(1)(B). *See* Order of reference (docket no. 4). After reviewing the original

3

complaint, the undersigned issued a report recommending dismissal of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that the court "shall dismiss" actions brought *in forma pauperis* "at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." *See* Order (docket no. 3); R&R (July 11, 2013)(docket no. 5). The report concluded that plaintiff's complaint did not name a defendant and did not set forth a coherent cause of action, and recommended *sua sponte* dismissal of the action without prejudice. *Id.* In reaching this determination, the undersigned stated in pertinent part as follows:

> Plaintiff's complaint does not set forth a coherent cause of action. As an initial matter, plaintiff's failure to name a defendant in the complaint can be grounds for dismissal. [FN 1] When a plaintiff's complaint does not name a defendant, this court does not have authority to take it upon itself to name someone as a defendant and subject that person (or corporation) to the substantial burden and cost of federal litigation. Even if plaintiff had named a defendant in the caption of his complaint (which he did not), that identification without an allegation of conduct by the defendant would be insufficient to maintain an action in federal court. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("[w]here a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints").
>
> The court can speculate from the attachments to the complaint that defendant is plaintiff's former employer, Michigan Turkey Producers Cooperative, Inc., *see* Letter (docket no. 1-1 at p. 21), and that defendant terminated plaintiff's employment on March 7, 2012 due to "continued inappropriate conduct and lack of courtesy and respect." *Id.* Employee disciplinary records reflect that prior to his termination he received a written verbal warning for two incidents of "poor overall attitude," a one-day suspension without pay for "inappropriate conduct" and "unprofessional/poor behavior," and an indefinite suspension without pay while an investigation was pending for "inappropriate conduct" (involving a statement that plaintiff did not want to work around another employee because plaintiff "didn't want to go to jail for hurting him." *See* Employment records (docket no. 1-1 at pp. 17-19). Plaintiff apparently filed a charge of race discrimination with the Michigan Department of Civil Rights and the United States Equal Employment Opportunity Commission (EEOC) on March 14, 2012, alleging that he was disciplined once and then "discharged due to my race." *See* Charge of Discrimination (docket no. 1-1 at p. 16). The EEOC dismissed plaintiff's race discrimination charge on April 8, 2013, after adopting "the findings of the state or local fair employment practices agency that

> investigated the charge." *See* EEOC Dismissal (docket no. 1-1 at p. 2). Plaintiff also provided a copy of a decision from the Michigan Administrative Hearing System which found that plaintiff was eligible for unemployment insurance, based in part on his employer's failure to present first-hand testimony regarding plaintiff's misconduct. *See* Administrative Decision (docket no. 1-1 at pp. 6-9). None of this information, however, found its way into plaintiff's complaint, and the court, even in its most liberal moments, is not free to choose a defendant for plaintiff to inflict liability upon, nor conjure up unpled allegations in support of claims the judge might favor.
>
> Plaintiff's complaint should be dismissed because it consists of nothing more than a series of vague statements disputing his termination and complaining about his lack of health insurance. While some attachments to the complaint reflect that plaintiff filed an EEOC charge against defendant for race discrimination, this claim is alleged nowhere in the complaint. Even the most liberal reading of plaintiff's complaint cannot be construed as setting forth a federal cause of action against defendant. *See, e.g., Mitchell*, 8 Fed. Appx. at 513-14 (district court properly dismissed a complaint under § 1915(e)(2), where the plaintiff's complaint "contain[ed] no factual allegations in support of her apparent claims of intimidation, harassment, and discrimination").
>
> > [FN 1 It appears that the Clerk's Office elected to identify the Michigan Turkey Producers Cooperative, Inc. as the defendant, based upon plaintiff's attachments and other random papers filed in this matter, rather than to list the defendant simply as "unknown."]

Report and Recommendation (R&R) at pp. 3-4 (docket no. 5).[1]

Because the original complaint did not identify a defendant, the Court did not (indeed could not) issue summonses to serve the complaint. While the court was required to serve the summonses at no cost to plaintiff due to his *in forma pauperis* status, plaintiff had the responsibility to identify a defendant to be served. *See* 28 U.S.C. § 1915(d) ("[t]he officers of the court shall issue and serve all process" for a plaintiff proceeding *in forma pauperis*); Fed. R. Civ. P. 4(c)(3) (the court must "order that service be made by a United States marshal or deputy marshal . . . if the plaintiff

---

[1] The July 11, 2013 R&R was subsequently vacated. However, the undersigned reincorporates the conclusions and reasoning as set forth in it. *See* discussion, *infra*.

is authorized to proceed in forma pauperis under 28 U.S.C. § 1915"); *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996) (where a plaintiff is proceeding *in forma pauperis*, the court is obligated to issue the plaintiff's process to the United States Marshals Service who must in turn effectuate service upon the defendant, thereby relieving the plaintiff of the burden to serve process "once reasonable steps have been taken to identify for the court the defendants named in the complaint").

Plaintiff had fourteen days to object to the R&R pursuant to W.D. Mich. LCivR 72.3(b). However, rather than filing an objection, plaintiff apparently retained counsel (Attorney Jonathan Browning), who filed an appearance (which was docketed as a motion for leave to appear) and a motion to file an amended complaint. *See* Appearance (docket no. 6) and Motion for leave to amend the complaint (docket no. 7). The Court granted both motions and vacated the R&R. *See* Order (docket no. 8). Plaintiff, through counsel, filed an amended complaint on November 28, 2013. *See* Amend. Compl. (docket no. 9). Although plaintiff's counsel e-filed the document as the "First Amended Complaint," the document itself is designated as plaintiff's "complaint." *Id.*

## II. Allegations set forth in plaintiff's amended complaint

Plaintiff amended complaint seeks relief for a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e17. Amend. Compl. at ¶ 1. Plaintiff alleged the following facts in support of his claim. Defendant hired plaintiff in June 2011 to work as a janitor. *Id.* at ¶ 8. Immediately after hiring plaintiff, defendant, through its agents and employees, began a pattern of treating plaintiff in a manner differently from the other employees. *Id.* at ¶ 9. For example, another plant employee, Jose Martinez, consistently whistled at plaintiff, intending to startle plaintiff and cause him to feel isolated and uncomfortable. *Id.* at ¶ 11. When plaintiff "let the whistling employee know he was out of line," it was plaintiff, rather than Martinez, who "was

6

written up" by defendant. *Id.* at ¶ 12. Although witnesses Michael Cuadrado and Roberto Hernandez alleged having witnessed no particular wrongdoing, plaintiff was given a written reprimand. *Id.* In November 2011, plaintiff complained to defendant's management personnel regarding the unprofessional conduct of his coworkers. *Id.* at ¶ 10.

On November 23, 2011, shortly after objecting to his disparate treatment, plaintiff "was given written discipline for frivolous reasons." *Id.* at ¶ 15. The discipline makes no mention of any action taken by plaintiff, but states that "[d]efendant values cultural diversity." *Id.* at ¶ 16. Plaintiff "had not taken any actions that were disrespectful or discourteous to his coworkers." *Id.*

Plaintiff also complained of numbness in his right hand and visited an orthopedic specialist on February 14, 2012. *Id.* at ¶ 17. Defendant was aware that plaintiff "had this procedure." *Id.* At the time, plaintiff was covered under defendant's insurance program. *Id.*

On March 2, 2012, plaintiff attempted to clean a laboratory, but "the laboratory employees refused to provide him with access to the room." *Id.* at ¶ 19.

On March 6, 2012, Mr. Linh Pham corrected Mr. Shelton on the use of bleach, saying his concentration was too strong. *Id.* at ¶ 20. Mr. Pham waited ten minutes, altered the bleach himself, and then gave plaintiff a written discipline. *Id.* On that date, plaintiff attempted to file a complaint against his supervisor, Mr. Pham because of Mr. Pham's behavior. *Id.* at ¶ 21. Later that day, plaintiff was discharged "for allegedly being a threat to his supervisor, Mr. Pham, who was not present at the time of the alleged threat." *Id.* at ¶ 22. Plaintiff denies that he threatened his supervisor and denies that he engaged in any of the acts as claimed by defendant. *Id.* at ¶ 23.

On March 14, 2012, plaintiff filed a "Charge of Discrimination" against defendant, with the Michigan Department of Civil Rights ("MDCR") and the United States Equal Employment

Opportunity Commission ("EEOC"). *Id.* at ¶ 24. On April 8, 2013, plaintiff received a Dismissal and Notice of Rights from the EEOC, which allowed him 90 days to file in federal court. *Id.* at ¶ 25.

Of defendant's approximately 200 or more employees, plaintiff was one of only two African-Americans. *Id.* at ¶ 13. Defendant's supervisor Mr. Linh Pham accused the only other African-American employee of the defendant with drug use. *Id.* at ¶ 14. This accusation was groundless. *Id.*

Plaintiff's complaint involves one count under Title VII, 42 U.S.C. § 2000e *et seq*. for race discrimination. *Id.* at ¶ 33. Plaintiff alleged that defendant is a qualifying employer under 42 U.S.C. § 2000e(a) and that defendant treated him "in a manner disparate to its employees who were not African American." *Id.* at ¶¶ 27-28. Specifically, in disputes between plaintiff and another employee, the other employee, "who had begun the confrontation, was not written up, but [plaintiff] was." *Id.* at ¶ 29. In addition, plaintiff was treated differently than similarly situated employees due to his race, which included "other employees demeaningly referring to him as 'brother', accusing the only other African American employee of drug use without cause to do so, and favoring other employees in disputes against [plaintiff]." *Id.* at ¶ 30. Defendant's targeting of plaintiff for discipline and its negative employment action was "unequal treatment as a direct consequence of [plaintiff's] race." *Id.* at ¶ 32. In sum, defendant's actions violated 42 U.S.C. § 2000e-2(a)(1) by discriminating against plaintiff with respect to employment. *Id.* at ¶ 31. For his relief, plaintiff seeks attorney fees and court costs, consequential damages, damages for lost future wages, emotional distress damages and other unspecified relief. *Id.* at p. 5.

### III. Defendant has never been served with a summons

Defendant points out that it has never been served with a summons in this action. As discussed, summonses could not be issued to serve the original complaint because plaintiff failed to name a defendant. After plaintiff retained counsel and filed the amended complaint, the Clerk's Office noted that summonses were not issued because "none [were] provided." Service of a summons is required to commence a civil action in federal court. As the court explained in *United States v. Perez*, 752 F.3d 398 (4th Cir. 2014):

> A civil action in federal court commences with the filing of a complaint, *see* Fed.R.Civ.P. 3, and personal service of a summons and a copy of the complaint upon the defendant, *see* Fed.R.Civ.P. 4(c)(1). Rule 4 dictates that the summons must, among other things, identify the court and the parties; apprise the defendant when he or she must appear to defend against the allegations; and warn the defendant that failure to appear will result in a default judgment in favor of the plaintiff. *See* Fed.R.Civ.P. 4(a)(1). If the summons is not served on the defendant within 120 days after the complaint is filed, dismissal is required unless the district court extends the time for good cause shown. *See* Fed.R.Civ.P. 4(m).

*Perez*, 752 F. 3d at 404. "The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service." Fed. R. Civ. P. 4(c)(1).

Here, because plaintiff was granted *in forma pauperis* status, the United States Marshals Service would serve the summonses at no cost to him. *See* Order (docket no. 3). Under 28 U.S.C. § 1915(d), "[t]he officers of the court shall issue and serve all process" for a plaintiff proceeding *in forma pauperis*. *See also*, Fed. R. Civ. P. 4(c)(3) (the court must "order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915"). While the court is required to issue and serve summonses, it is the plaintiff's responsibility to locate the defendants and submit their addresses to

9

the court. *See Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996) (where a plaintiff is proceeding *in forma pauperis*, the court is obligated to issue the plaintiff's process to the a United States Marshal who must in turn effectuate service upon the defendant, thereby relieving the plaintiff of the burden to serve process "once reasonable steps have been taken to identify for the court the defendants named in the complaint"). As discussed, summons did not issue because plaintiff did not name a defendant in the original complaint.

Although plaintiff never served a summons on defendant, it appears that defendant learned of this litigation, prompting it to file the present motion to dismiss. In an uncontested affidavit, Timothy O'Donnell, a security guard at defendant's facility in Wyoming, Michigan, stated that he signed for a packet received from the postal service on December 11, 2013. O'Donnell Aff. (docket no. 11-1). On that day, MaryAnne McCaffrey, defendant's Director of Human Resources, was at the Wyoming facility when she noticed a piece of certified mail addressed generally to defendant with a return address of an attorney. McCaffrey Aff. at ¶¶ 1-7 (docket no. 11-2).[2] She opened the envelope and found a copy of a complaint dated November 28, 2013, which had the same caption of this case. *Id.* at ¶ 8. However, "[t]here was no summons or any other document in the envelope." *Id.* Neither Mr. O'Donnell or Ms. McCaffrey is in charge of defendant's Wyoming facility, nor are either of them a corporate officer, director, or agent of defendant. O'Donnell Aff. at ¶ 6; McCaffrey Aff. at ¶ 10.

---

[2] While Ms. McCaffrey refers to an attached copy of the envelope at issue as being attached to her affidavit as Exhibit A, no such exhibit is in the Court file.

IV. **Defendant's Motion to dismiss**

A. **Insufficient process and Insufficient service of process**

Defendant seeks dismissal for insufficient process pursuant to Fed. R. Civ. P. 12(b)(4) and insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5). "Generally speaking, '[a]n objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service,' while a 'Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint.' 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1353." *Gartin v. Par Pharmaceutical Companies, Inc.*, 289 Fed.Appx. 688, 692 (5th Cir. 2008). Because defendant challenges the lack of delivery of the summons and complaint, the Court will review its motion under Fed. R. Civ. P. 12(b)(5). In resolving this motion, the plaintiff bears the burden of proving that proper service was effected. *Aetna Business Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981); *Frederick v. Hydro-Aluminum S.A.*, 153 F.R.D. 120, 123 (E.D. Mich.1994). Facts in uncontroverted affidavits may be considered in ruling on a motion to dismiss under Rule 12(b)(5). *See Metropolitan Alloys Corp. v. State Metals Industries, Inc.*, 416 F.Supp.2d 561, 563 (E.D. Mich. 2006); *Shires v. Magnavox Co.*, 74 F.R.D. 373, 376-77 (E.D. Tenn. 1977). *See Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008) ("a judge may make factual findings necessary to resolve motions to dismiss for lack of personal jurisdiction, improper venue, and ineffective service of process").

With respect to service, the court may construe a motion to dismiss for ineffective service of process as a motion to quash service. *See Young's Trading Company v. Fancy Import, Inc.*, 222 F.R.D. 341, 342-43 (W.D. Tenn. 2004) ("[w]here service is ineffective, a court has discretion to either dismiss the action or quash service and retain the case") (citing *Haley v.*

11

*Simmons*, 529 F.2d 78, 79 (8th Cir.1976)); *Daley v. ALIA*, 105 F.R.D. 87, 89 (E.D. N.Y.1985) ("[w]hen the gravamen of defendant's motion is insufficiency of process, however, the motion must be treated as one to quash service, with leave to plaintiffs to attempt valid service"). The Sixth Circuit has expressed a preference to treat the first motion for improper service as a motion to quash rather than a motion to dismiss. *See Stern v. Beer*, 200 F.2d 794, 795 (6th Cir. 1953) ("if the first service of process is ineffective, a motion to dismiss should not be granted, but the case should be retained for proper service later"). Consistent with the preference expressed in *Stern*, defendant's motion to dismiss plaintiff's complaint for lack of proper service would not be dispositive; rather, the appropriate remedy would be to allow plaintiff an opportunity to attempt valid service of the amended complaint. However, the undersigned concludes that the service of process issue is moot because plaintiff's claim is barred by the statute of limitations.

### B.   Statute of limitations

Defendant also seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6). A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) seeks to dismiss a complaint for "failure to state a claim upon which relief can be granted." A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief"). A plaintiff's obligation to provide the defendants with a statement of his claim is obligated to provide "more than labels and conclusions." *Id.* Rather,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is

>not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). In addition, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

Finally, it is well established that "*pro se* complaints are held to even 'less stringent standards than formal pleadings drafted by lawyers.'" *Kent v. Johnson*, 821 F.2d 1220, 1223 (6th Cir. 1987), quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the duty to be "less stringent" with *pro se* complaints does not require this court to conjure up unpled allegations. *McDonald v. Hall*, 610 F.2d 16, 19 (lst Cir. l979).

Plaintiff's amended complaint seeks relief under Title VII. *See* Amend. Compl. at ¶¶ 26-33. Defendant contends that this claim is time-barred. "To pursue Title VII claims in federal court, a plaintiff must file a complaint within 90 days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e–5(f)(1)." *Hollimon v. Shelby County Government*, 325 Fed. Appx. 406, 409 (6th Cir. 2009). Here, the EEOC issued its right to sue letter to plaintiff on April 8, 2013, with the 90-day period expiring on July 7, 2013. *See* Amend. Compl. at ¶ 25 (docket no. 9). Plaintiff filed his original complaint well within that time-frame on April 23, 2013. However, plaintiff's

original complaint did not name a defendant and he took no steps to obtain a summons or serve the original complaint. Plaintiff's counsel filed the amended complaint on November 28, 2013. *See* First Amend. Compl. (docket no. 9). This was the first pleading which actually named MTP as the defendant.

Defendant contends that plaintiff's claim is untimely because (1) the original complaint did not name MTP (or any other person or entity as a defendant), (2) the amended complaint which did name MTP as defendant was filed after the 90-day limitation, and (3) plaintiff's claims alleged against defendant in the amended complaint did not relate back to the filing of the original complaint. In his response, plaintiff attempts to circumvent Fed. R. Civ. P. 15 by claiming that the original complaint was not a pleading:

> Therefore, Mr. Shelton's handwritten document does not amount to a complaint recognized under the requirements of Rule 8 of the F.R.C.P. because it does not satisfy [any] of the requirements of the F.R.C.P. Even in the most liberal construction, it does not amount to a pleading under 8(a).

Plaintiff's Response at p. 7. Indeed, as part of his relief, "plaintiff prays that this Court find that the original document by Randall Shelton was not a complaint because it fails the standards of FRCP 8(a)." *Id.* at p. 10.

Plaintiff's argument is disingenuous and undermines his objection to defendant's motion. If the Court adopted plaintiff's position that the original complaint was a nullity (despite plaintiff's motion for leave to amend it), then defendant is entitled to summary judgment because counsel did not file a "complaint" until November 28, 2013, more than four months after the expiration of the 90-day limitation period. The Court will not adopt this position, however, because counsel's present position is contrary to his motion for leave to amend the *pro se* complaint and set aside the R&R which stated in pertinent part:

14

> Plaintiff, by and through his attorney, Jonathan Browning, hereby move this Honorable Court to grant leave to amend the Complaint pursuant to FRCP15(a)(2). Plaintiff had originally filed as a *Pro Se* litigant. While the Plaintiff does have legitimate claims against the Defendant Michigan Turkey Producers, the original Complaint was defective as the Plaintiff attempted to represent himself *Pro Se*.
>
> Plaintiff prays that this Honorable Court will grant leave in order to further the cause of justice in this matter.
>
> Plaintiff, through counsel, also moves that the Court's Report and Recommendation dated July 11th, 2013, be set aside. The defects with the Complaint as it currently stands will no longer be applicable after the Complaint is re-drafted by counsel.

Plaintiff's Motion to amend (docket no. 7). The undersigned granted plaintiff's motion to amend and directed plaintiff's counsel to file an amended complaint within 21 days, with the proviso that "**If plaintiff fails to file an amended complaint within the allotted time, the Court will re-instate the Report and Recommendation.**" Order (docket no. 8) (emphasis in original).

The record reflects that plaintiff filed an amended complaint on November 28, 2013. The issue before the Court is whether plaintiff's amended complaint relates back to the filing date of the original complaint, which was within the 90-day limitations period set forth in the EEOC right-to-sue letter. An amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

The Sixth Circuit summarized the requirements for "relation back" as follows:

> When a plaintiff seeks to amend a complaint to add a party against whom the claim would otherwise be barred by the statute of limitations, the amended pleading is considered to relate back to the date of the original, timely pleading where:
>
> > 1. "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading," *see* Fed. R. Civ. P. 15(c)(1)(B), and
> >
> > 2. the added party is "served within 120 days after the [initial] complaint is filed . . . [or] the plaintiff shows good cause for the failure [to serve the added party within 120 days]," *see* Fed. R. Civ. P. 4(m).
>
> Fed. R. Civ. P. 15(c)(1)(C). If both these criteria are satisfied, then the party may be added so long as the added party,
>
> > 3. "received such notice of the action that it will not be prejudiced in defending on the merits," *see* Fed. R. Civ. P. 15(c)(1)(C)(i), and
> >
> > 4. "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity," *see* Fed. R. Civ. P. 15(c)(1)(C)(ii).

*Lockhart v. Holiday Inn Express Southwind*, 531 Fed. Appx. 544, 548 (6th Cir. 2013).

Here, plaintiff's amended complaint does not relate back to the date of the original complaint filed in this matter. First, plaintiff did not meet the requirement of Fed. R. Civ. P. 15(c)(1)(B) because the amended complaint did not assert a claim or defense that arose out of the conduct, transaction, or occurrence set out, or attempted to be set out, in the original complaint. The

16

original complaint did not include any allegation of race discrimination. While the attachments to the original complaint included a copy of an EEOC right to sue letter and a copy of the March 14, 2012 charge of race discrimination, it also included a number of other attachments which related to his employer, his doctor, his dentist, his insurance company and his claim for unemployment compensation. As defendant points out, based on the original complaint, "it is impossible to know who he was suing or about what":

> Was he complaining about the Michigan Unemployment Agency, the Friend of the Court, Priority Health or one or more of the named health care providers referenced in the attachments to his Complaint? Maybe. Was his claim one for administrative relief of some kind relating to his unemployment benefits or payments to Friend of the Court? Was it an ERISA claim against his health insurer or a billing dispute involving one of the health care providers? Perhaps. Or maybe it was a claim relating to his employment (though that is not mentioned) based upon his race (also not mentioned) against MTP (again, not mentioned). . . . The first Complaint reveals absolutely no claims of racial discrimination."

Defendant's Brief at pp. 11-12.

Second, plaintiff did not meet the requirement of service under Fed. R. Civ. P. 4(m). As discussed, plaintiff has never served MTP, nor has he shown good cause for his failure to serve MTP. Plaintiff's failure to meet the requirements of Fed. R. Civ. P. 15(c)(1)(B) and 4(m) precludes the relation back of the amended complaint. *Lockhart*, 531 Fed. Appx. at 548.

Even if plaintiff had met these two requirements, he failed to meet the fourth requirement, Fed.R.Civ.P. 15(c)(1)(C)(ii), because he has not shown that defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity" in the original complaint.[3] Plaintiff did not make a mistake by naming the

---

[3] With respect to the third requirement, Fed. R. Civ. P. 15(c)(1)(C)(i), i.e., that the added party "received such notice of the action that it will not be prejudiced in defending on the merits," defendant points out that plaintiff "did absolutely *nothing* to notify MTP of this action until the mailed-delivery of the Amended Complaint on December 11, 2013" (emphasis in original). While this appears true, defendant does

wrong party as a defendant in the original complaint. Rather, plaintiff did not name *any* defendant in the original complaint. As the Court observed in *Smith v. City of Akron*, 476 Fed. Appx. 67 (6th Cir. 2012), failing to identify a defendant in the original complaint does not constitute "mistaken identification" under Fed. R. Civ. P. 15(c):

> [The plaintiff] did not make a mistake about which defendant to sue; he simply did not know whom to sue or opted not to find out within the limitations period. Because he waited until the last day of the two-year limitations period to file his complaint, that left no time to discover the identity of his arresting officers within the relevant time. . . Rule 15(c) offers no remedy for this problem. The Rule allows relation back for the mistaken identification of defendants, not for defendants to be named later through "John Doe," "Unknown Defendants" or other missing appellations. Our approach is consistent with the holdings of every other circuit on this issue.

*Smith*, 476 Fed. Appx. at 69-70 (internal citations omitted). "Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the 'mistaken identity' requirement of Rule 15(c)(3)(B)." *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) ("[s]ubstituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties").

In summary, the Title VII claim raised in plaintiff's amended complaint is barred because he filed it more than 90 days after receipt a right-to-sue letter from the EEOC, and the claim does not relate back to the filing of the original complaint. 42 U.S.C. § 2000e–5(f)(1); *Lockhart*, 531 Fed. Appx. at 548; *Hollimon*, 325 Fed. Appx. at 409. Accordingly, defendant's motion to dismiss should be granted.

---

not demonstrate that it will be prejudiced due to this late notification.

## V. RECOMMENDATION

For these reasons, I respectfully recommend that defendant's motion to dismiss (docket no. 10) be **GRANTED**.


Dated: August 18, 2014                         /s/ Hugh W. Brenneman, Jr.
                                               HUGH W. BRENNEMAN, JR.
                                               United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).